***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Stanback, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner in a Pre-Trial Agreement dated May 16, 2002, as:
 STIPULATIONS
1. An employee-employer relationship existed between plaintiff and defendant.
2. The parties are subject to, and bound by the provisions of the North Carolina Workers' Compensation Act.
3. Wilkes County Schools is self insured with Key Risk Management Services, Inc., as the administrator.
4. Plaintiff sustained an injury on May 18, 2001.
5. Defendant denied plaintiff's claim on the basis that the injury suffered was not the result of an accident arising out of and in the course of employment as defined by the Workers' Compensation Act.
6. A Form 33 Request that claim be assigned for hearing was filed by plaintiff pro se on October 16, 2001.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 51 years old, and employed with Wilkes County Schools as a guidance counselor and testing coordinator. Plaintiff had been employed with the Wilkes County School System for the 27 years preceding the hearing before the Deputy Commissioner.
2. As part of his work duties, plaintiff gives presentations in classrooms, attends meetings, and participates in test coordination activities, which includes moving boxes at times.
3. Prior to his injury on May 18, 2001, plaintiff had never experienced any physical problems with his left shoulder, and was able to perform his normal and ordinary duties without limitation.
4 On May 18, 2001, plaintiff was supervising the editing of test materials in his office, along with a group of teachers and teacher assistants. Plaintiff attempted to retrieve a box of testing materials from his closet. At the time, the closet door would not open completely. Plaintiff reached out at eye level, and attempted to remove the box from the closet; however, the box would not move because it was wedged between two other boxes. As plaintiff then pulled, yanked, and jerked on the box, he felt a pop in his left shoulder that was followed by severe pain in the same area. Plaintiff reported the injury to his supervisor on the same day and provided a written statement of the accident.
5. There was no evidence showing that plaintiff had ever had to retrieve a wedged box before the date of his injury. The wedged position of the box and the inability to open the closet door to provide ready access constituted an interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.
6. Because he was the only test coordinator employed by defendant, plaintiff continued with his work duties until May 24, 2001, when the pain became unbearable. Plaintiff presented to Watauga Medical Center emergency room, complaining of left shoulder pain, where he received an injection and an arm sling.
7. Plaintiff continued to have difficulty, so he was referred to Marion Herring, M.D., an orthopedic surgeon. He was seen by Dr. Herring on June 22, 2001, and described the incident at work. Dr. Herring made an initial diagnosis of an acute rotator cuff tear, placed plaintiff in physical therapy, and prescribed medication. Plaintiff was very compliant with his physical therapy sessions; however, six weeks later, plaintiff was still in pain and had lack of function with the left shoulder.
8. Dr. Herring ordered an MRI, the results of which revealed tendonitis but not an acute rotator cuff tear. Plaintiff continued with physical therapy. By October 8, 2001, plaintiff's range of motion was worse, such that Dr. Herring added a diagnosis of adhesive capsulitis or "frozen shoulder." As of the time of Dr. Herring's deposition on August 6, 2002, plaintiff had not reached maximum medical improvement, and was considering surgery as recommended by Dr. Herring.
9. Dr. Herring opined, and the Full Commission finds as fact, that plaintiff's left shoulder condition is causally related to the injury by accident of May 18, 2001, and that plaintiff requires additional medical treatment to effect a cure, provide relief, or lessen the period of disability.
10. The appeal of this case to the Full Commission was brought by the insurer (here, the self-insured Wilkes County Schools) and the Commission by its decision orders the insurer to make or to continue payments of benefits, including compensation for medical expenses, to the injured employee. Under such circumstances, the Commission may order that the cost to the injured employee of such hearing or proceedings, including therein a reasonable attorney's fee to be determined by the Commission, shall be paid by the insurer as a part of the bill of costs. The Full Commission finds that the reasonable attorney fee for plaintiff's defense of this appeal would be $2,000.00.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. It is well settled that an "accident," within the meaning of the Workers' Compensation Act, is in an unlooked for and untoward event that is not expected or designed by the injured employee. Unusualness and unexpectedness are the essence of an accident. As such, an accident involves the interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences as found in the following analogous cases:
 — [The] position of the tractor on a hillside prevented the employee from following his customary work routine in installing the tire. Bigelow v. Tire Sales Co., 12 N.C. App. 220, 182 S.E.2d 856 (1971)
 — [P]laintiff was installing a stand on a steel beam some 70 feet above the ground; plaintiff was seated on the beam and was using a hammer and bull pin to align the holes in the stand with holes in the beam; plaintiff had to lean under the beam and drive the bull pin upward through holes in the beam; plaintiff felt a pain in his back when he attempted to bring his body to an upright position; the normal bolting up operation requires driving bolts from the side; plaintiff had driven a pin from a position under a beam only on rare occasions in the past. Dunton v. Daniel Constr. Co., 19 N.C. App. 51, 198 S.E.2d 8 (1973)
 — Where plaintiff `s work routine, the lifting of lighter crates, was interrupted by introduction of a crate heavier than expected and heavier than usual, the Commission was warranted in concluding as a matter of law that plaintiff suffered an injury "by accident." Gladson v. Piedmont Stores/Scotties Disct. Drug Store, 57 N.C. App. 579, 292 S.E.2d 18, cert. denied, 306 N.C. 556, 294 S.E.2d 370
(1982).
 — [The] lifting of heavy bobbins for looms for weaving fiberglass had not become part of claimant's normal work routine, and thus, claimant's elbow injury from lifting heavy bobbin was an "accident," Moose v. Hexcel-Schwebel, 592 S.E.2d 615, N.C. App. 2004.
 — [P]laintiff was required to turn and twist his body in order to lift chairs on the occasion complained of. This was different from his normal routine of lifting chairs with his upper torso in a straight posture and was sufficiently different from the way plaintiff normally lifted to constitute an interruption of the plaintiff's normal work routine. Adams v. Burlington Industries, Inc., 61 N.C. App. 258, 260, 300 S.E.2d 455, 456 (1983).
 — The events of July 17, 1997 when the aircraft hit unexpected air turbulence and caused plaintiff to strike her lower back and legs against the aircraft's wall and injure her lower back and legs constituted an interruption of plaintiff's work routine and an injury by accident arising out of and in the course of her employment. Lakey v. U.S. Airways, Inc., 573 S.E.2d 703, N.C. App. 2002.
In the case now before the Full Commission, the wedged position of the box and the inability to open the closet door to provide ready access constituted an interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. The resulting injury to the arm was an injury by accident within the meaning of the Workers Compensation Act. Thus, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant on May 18, 2001, which resulted in an injury to his left shoulder. N.C. Gen. Stat. § 97-2(6.) and cases cited above.
2. Plaintiff is entitled to all reasonably necessary medical expenses for treatment related to his May 18, 2001, injury by accident, tending to effect a cure, provide relief, or lessen the period of disability, including, but not limited to, medical treatment received to date from Watauga Medical Center, Dr. Marion Herring at Boone Orthopedic (including possible surgical intervention), and Wilkes Regional Medical Center. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
3. Plaintiff is entitled to temporary total disability, if any, to the extent that he is unable to earn the same or greater wages for any period beyond the seven-day waiting period, as a result of his compensable injury by accident. There will likely be a period of temporary total disability following surgery. N.C. Gen. Stat. §§ 97-28 and 97-29.
4. Plaintiff is entitled to permanent partial disability, if any, to the extent that he has permanent impairment to his left arm once he reaches maximum medical improvement as a result of his compensable injury by accident. N.C. Gen. Stat. § 97-31.
5. Plaintiff's attorney fee for defending this appeal may be taxed against defendants pursuant to N.C. Gen. Stat. § 97-88, which provides:
 If the Industrial Commission at a hearing on review or any court before which any proceedings are brought on appeal under this Article, shall find that such hearing or proceedings were brought by the insurer and the Commission or court by its decision orders the insurer to make, or to continue payments of benefits, including compensation for medical expenses, to the injured employee, the Commission or court may further order that the cost to the injured employee of such hearing or proceedings including therein reasonable attorney's fee to be determined by the Commission shall be paid by the insurer as a part of the bill of costs.
N.C. Gen. Stat. § 97-88
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay all reasonably necessary medical expenses for treatment related to plaintiff's May 18, 2001, injury by accident, which is necessary to effect a cure, provide relief, or lessen the period of disability, including, but not limited to, medical treatment received to date from Watauga Medical Center, Dr. Marion Herring at Boone Orthopedic (including possible future surgical intervention), and Wilkes Regional Medical Center.
2. Defendant shall pay to plaintiff temporary total disability resulting from his injury by accident of May 18, 2001, if he is unable to earn the same or greater wages for any period beyond the seven-day waiting period, subject to a reasonable attorney's fee.
3. Defendant shall pay to plaintiff compensation for permanent partial disability, if any, resulting from his injury by accident of May 18, 2001, once plaintiff has reached maximum medical improvement, pursuant to N.C. Gen. Stat. § 97-31, subject to a reasonable attorney's fee.
4. Defendant shall pay to plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation, if any, due plaintiff in Paragraphs 2 and 3 of this AWARD.
5. Defendant shall pay to plaintiff's counsel a reasonable attorney's fee in the amount of $2,000.00 pursuant to N.C. Gen. Stat. § 97-88. Such fee shall be taxed as costs to defendant and shall not be deducted from any other sums due plaintiff or plaintiff's counsel.
6. Defendant shall pay the costs of this action.
This 29th day of April 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER